# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

       Case No: 4:18mj17-CAS

    v.

       <u>UNDER SEAL</u>

ADAM KING

_____/

## AFFIDAVIT

I, Jeffery Watson, being duly sworn and deposed state as follows:

### INTRODUCTION

1.    I am a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration ("DEA"), currently assigned to the Tallahassee Resident Office. This affidavit concerns an investigation by law enforcement into offenses under federal criminal law, specifically conspiracy to distribute 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B) and 846.

2.    This investigation concerns illegal trafficking in cocaine and crystal methamphetamine, both Schedule II controlled substances. This investigation has identified Barney CRUTCHFIELD, James David CASE, Adam KING and Shelly BAITY as members of a Tallahassee, Florida based cocaine and crystal methamphetamine trafficking organization, which purchases cocaine from sources of supply in other areas of Florida and purchases crystal methamphetamine from

Rec'd JAN 17 18 USDC Fl N4PM 074

other states and sells the cocaine and crystal methamphetamine in the Tallahassee area.

3. This affidavit is made in support of a Criminal Complaint against Adam KING.

4. The facts set forth in this Affidavit are based on my personal participation in this investigation and from information provided by Special Agents, Task Force Agents, and Police Officers (collectively referred to as the "Agents") from various federal, state, and local law enforcement agencies, and on my experience, training, and background as a DEA Task Force Officer. Because this affidavit is being submitted solely for establishing probable cause to seek an arrest warrant for the listed individuals, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to support the issuance of a complaint.

<u>PROBABLE CAUSE</u>

5. The Drug Enforcement Administration (DEA), Florida Department of Law Enforcement and the Leon County Sheriff's Office have been jointly investigating a Drug Trafficking Organization (DTO) operating within the North district of Florida area. The organization is headed by Barney CRUTCHFIELD, who is responsible for the distribution of large quantities of cocaine and crystal methamphetamine in Northwest Florida. During the course of this investigation, a

series of Federal and State wiretaps corroborated the actions of CRUTCHFIELD and other members of the DTO.

6. CRUTCHFIELD's main distributors, within his DTO, are James David CASE and Adam KING. CRUTCHFIELD also uses CASE and KING as couriers to resupply the DTO with cocaine and/or crystal methamphetamine. KING also has a separate source of supply and customer base for illegal narcotics, independent of the CRUTCHFIELD DTO. During the investigation, KING arranged for numerous sales of cocaine and crystal methamphetamine, both at the direction of CRUTCHFIELD and independently of CRUTCHFIELD.

7. For example, on October 21, 2017, at approximately 6:26 p.m., pursuant to the federal wiretap on KING's phone, agents intercepted a phone call between KING's phone and phone number (229) 289-3968, being used by Fabien TEAL. The communication stated-

TEAL: What's going on with you, my boy?
KING: Oh, shit, man. Hanging out, hanging out. Doing a poker run today.
TEAL: Yeah.
KING: Yeah, yeah. What's going on up there?
TEAL: Shit, just chilling, man. Having a little party, I have for the kids and shit, smoking a little green.
KING: Cool. Everyone else went to Carrabelle, all around the beach. Shit, I get with you tomorrow.
TEAL: Yeah, I was going to let you know[U/I][1] what I see on [U/I]
KING: Oh yeah?
TEAL: God damn, when I see that so god damn pretty on that cream.

---

[1] The term [U/I] will be used to refer to portions of the conversation that were unintelligible.

KING: Aight.

TEAL: That coke, that coke, good. Oh, man. They clean so fucking pretty man but that coke was something too, man.

KING: Im'ma tell you...We got to talk about something. Hold on. I'll talk with you about it over there. Yeah, I gotta find a different word, I gotta move this motherfucker quick around here.

TEAL: Okay.

KING: My boys around here are scared of it.

TEAL: Of that cream?

KING: Yeah. My boys are scared as hell out of it. You know? Them fucking fiends, you know I ain't trying to fuck with them. I need somebody, I gotta find somebody trustworthy that can go down in there. And, um, get rid of it.

TEAL: Yeah.

KING: That's what I'm looking for. You know anyone?

TEAL: I probably can get in touch with people from down there [U/I] out there to get on your team.

KING: Aight, aight. I just want to make sure they are trustworthy now. I'm over there, staying by Orange Ave. Now. On South side. South Monroe. So, um...

TEAL: I'm going call out same names. Next time when we meet, I just exchange some numbers with you while we [U/I].

KING: Yeah, yeah.

TEAL: And let them talk, let ya'll talk,

KING: Aight.

TEAL: And see how you like the way they talk.

KING: I got you, I got you. Aight, I try, I try.

TEAL: You wanna go [U/I] You spending the money [U/I] money you spend [U/I] give you some customers.

KING: Yeah, yeah, yeah. As long as I can come off from it. I ain't got no problem with getting money, you know what I mean? And even if I'm not turning, if I'm not turning what I'm turning right now cause right now I'm turning, um, a great fucking margin. But, I'm turning to fucking slow to where the other boys are looking like " God damn". You know? They are used to running, they are used to running, um [STUTTERS] Sixty-two (62) of them a month, you know?

TEAL: Uh-huh

KING: So, Okay, I get with you tomorrow. We'll talk.

TEAL: Aight, just call me. [U/I] you're good., I know you'll call me.

KING: Yeah,yeah, yeah, yeah.

TEAL: I want you to [U/I] I wanna get up on the road.

KING: I got you. I got you.

TEAL: Aight.

KING: Aight.

Based on the intercepted communications, as well as my training and experience, when TEAL referenced "cream" he was referring to crystal methamphetamine and when he referenced "coke" he was referring to cocaine. Again, based on my training and experience, when KING said, "they are used to running . . . 62 of them a month," he was discussing the distribution of 62 ounces of cocaine and/or crystal methamphetamine per month.

8.    These interpretations of KING's conversation with TEAL were confirmed during a seizure of methamphetamine and cocaine from another source of KING's on November 29, 2017.

9.    Prior to the seizure, on November 28, 2017, at 10:39 p.m., KING's phone engaged in a wire communication with 229-220-0144, a number associated with William EDWARDS. The communication (as summarized by the officer monitoring the wire) stated-

KING: What up?
EDWARDS: What's going on?
KING: I'm [U/I] Uh, I want to see if, uh, you got around next time you go up, grab me one.
EDWARDS: Uh, over there, what you want the same thing or the other stuff?
KING: Uh, the other stuff.
EDWARDS: Ice cream?
KING: Yeah, yeah.
EDWARDS: Uh, I'm headed there right now. So, I'll see what I can do.
KING: Aight, meet me over there.
EDWARDS: I'll call you, I'll call you when I leave. I'll let you know what's up.
KING: Aight, appreciate it, bro.

EDWARDS: Yes, sir.

Based on other intercepted conversations, as well as training and experience, agents believed that KING was contacted EDWARDS to arrange a methamphetamine purchase.

10. Accordingly, on November 29, 2017, Agents conducted surveillance and were able to identify Edwards' vehicle driving back to Tallahassee from Georgia. Edwards' vehicle was stopped and law enforcement recovered approximately 4 ounces of methamphetamine and approximately 38.5 grams of cocaine from the vehicle. The methamphetamine and cocaine was field tested and both produced a positive result.

11. On November 30, 2017, following the stop, KING was intercepted complaining about the loss of the methamphetamine and the money he spent to purchase it. First, at 6:48 a.m., KING texted Jason Crowson, "don't have a pebble. He has 2 zips of mine tho."

12. Then at 7:53 a.m., KING was intercepted calling Amanda Mayo. The communication (as summarized by the officer monitoring the wire) stated-

> KING tells MAYO that Willie (EDWARDS) got busted last night and was charged with all sort of charges including trafficking. KING tells MAYO that they are now completely broke and out $800. MAYO acknowledges. KING said he gave Edwards everything he had yesterday.
>
> MAYO tells KING that she believes that Alex had something to do with it. KING asked for clarification. MAYO said that Alex knew who Edwards

6

was. KING asked if Alex had been calling MAYO. MAYO said not that she knew of and that Alex was vindictive.

MAYO said that someone should go and see him (Edwards) and find out how they caught him (Edwards). KING said that it would be in the police report. MAYO said that they could lie. KING says that Willie's girlfriend told KING that he thinks he (Edwards) was set up. KING says he hopes that Willie does not think that it was KING that set him (Edwards) up since Edwards made the run for KING. MAYO acknowledges and continued to believe that Alex is involved since Alex knows what KING does (drugs). KING affirms. Conversation about gas (car) ensued.

KING said that they need to stop doing drugs. MAYO affirms. KING said he is not going to spend money on it if he is not making on it. MAYO said they need a come up because stopping is going to be really hard. MAYO said she will call KING after dropping off Damien at school.

13. Based on the intercepted communications and the seizure of methamphetamine on November 29, 2017, I believe that KING was conspiring to obtain over 50 grams of methamphetamine from Edwards.

14. During the authorized wire intercept periods, Agents intercepted numerous calls where KING is negotiating and conducting ounce and multiple ounce cocaine and methamphetamine deals with scores of people. The above transaction's are intended to be a representative sample of the intercepted call and not intended to be all inclusive of the calls intercepted.

15. On January 16, 2018, the Honorable Charles A. Stampelos, United States Magistrate Judge, granted a search warrant for KING's place of business (3855 Crawfordville Road, Tallahassee, Florida). The warrant was executed on January 17, 2018. At KING's business, agents located items used in the sale of

narcotics, including baggies, digital scales, cutting devices, smoking devices, along with trace amounts of apparent narcotics on the paraphernalia. Agents also recovered one round of 9mm ammunition.

CONCLUSION

16. Based upon the above facts and my experience in the participation of numerous arrest and search warrants, I believe probable cause exists to believe that Adam KING has knowingly possessed and conspired to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B) and 846, in the Northern District of Florida.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Jeffery Watson
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this 17th day of January, 2018, in Tallahassee, Florida.

The Honorable Charles A. Stampelos
United States Magistrate Judge