**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 4:18mj17-CAS**

**ADAM KING,**

 **Defendant.**
_____/

## ORDER OF DETENTION AND PRELIMINARY HEARING

The United States has moved pursuant to the Bail Reform Act that

Defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A).

The Court must determine whether there is any condition or combination of

conditions that will reasonably assure the Defendant's presence at trial and

the safety of the community if probable cause is found that the Defendant

committed the offense alleged in the indictment.  Under § 3142(e)(3)(A),

there is a rebuttable presumption that "no condition or combination of

conditions will reasonably assure" the Defendant's appearance as required

and the safety of the community if probable cause is found that the

Defendant committed "an offense for which the maximum term of

imprisonment is ten years or more under the Controlled Substances Act."

Defendant has moved for a preliminary hearing.  After a hearing held on

January 22, 2018, the following findings are made:

1.  Defendant was arrested pursuant to warrant on January 17, 2018, on based on a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. ECF No. 7.  A Criminal Complaint was filed on January 17, 2018, stating that on or about September 5, 2017, to January 17, 2018, in Leon County, Florida, Defendant violated the above-cited provisions in that he did conspire to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine in the Northern District of Florida.  ECF No. 1.

2. The government has proffered that pursuant to an investigation of suspected drug trafficking in Northwest Florida, information was obtained by way of wiretaps concerning communications between Defendant and other individuals about obtaining and distributing illegal narcotics.  During the investigation, information was obtained which experienced investigators interpret as actions of Defendant King conspiring to obtain over 50 grams of methamphetamine, as set forth in more detail below.  Investigators also obtained information concerning Defendant's negotiation involving ounce and multiple ounce deals of controlled substances with several people.

3.  The weight of the evidence is strong and probable cause exists for the charge.

4.  The government proffered that a search warrant was executed on January 17, 2018, on the Defendant King's place of business that resulted in locating items used in the sale of narcotics, including drug paraphernalia, along with trace amounts of apparent narcotics on the paraphernalia, and one round of 9mm ammunition.  At that time, King was also living there, having just recently moved to that location.

5.  The government submitted Exhibits 1 through 5, transcripts of wiretaps on telephone conversations between Defendant and others, occurring between September 27, 2017, and November 29, 2017.

On September 27, 2017, Defendant informed Barney Crutchfield about the possible purchase of firearms, including an AK 47, a snub nosed .44 hammerless nickel-plated weapon and a home defense 12 gauge with a breakdown pistol grip.  Gov't Ex. 2.  In that same conversation, Defendant told Crutchfield that he had a problem with his father so he (Defendant) put a pistol in his back pocket to let his father know that if his father put a gun in his face again there would be problems.  Defendant indicated his father had gone into a shed and taken all Defendant's guns, but Defendant said he had three guns in his truck.  Gov't Ex. 2.

On October 3, 2017, in a telephone call between Defendant and Crutchfield, Defendant stated that his girlfriend's former roommate, who

was someone she also had sex with once, had gotten out of jail and put a knife to her throat. Gov't Ex. 4. Defendant stated that the person might be on the way over to the girlfriend's house, where Defendant was then living, so Defendant was going to handle it. He said he was going to get his girlfriend out of the house and when the person showed up, Defendant would put a "throwaway" gun to his head. Crutchfield told Defendant he was on his way to help and would run up behind him and box him in. *Id.*

Also on October 3, 2017, in second telephone call between Defendant and Crutchfield about the individual, Defendant stated his girlfriend had kicked this person out of the house. When Crutchfield said he would bust the man's head with a hammer, Defendant replied he had a hammer right next to the door. Gov't Ex 5. Defendant again said he would put a gun to the man's and get serious. He agreed with Crutchfield that he did not want to be looking over his shoulder for the rest of his life. Defendant said he had moved his truck so that no one would know he was there. *Id.* Crutchfield stated at one point that he would come up behind the man while he was talking to Defendant, and would knock him in the head and beat him to death so he could not testify against him, to which Defendant responded, "Yeah," and added he could also call an individual named "Kevin" who would "do it." Gov't Ex 5 at 5.

On October 12, 2017, Defendant and Barney Crutchfield discussed a location for delivery of a pound of "ice" and a "key" of cocaine. Gov't Ex. 1.

On November 29, 2017, Defendant told Crutchfield in a telephone call that a cell telephone he had been using might have dialed Crutchfield accidentally the night before because Defendant had smashed an individual named Chico in the head with it. Gov't Ex. 3. That telephone was not in use after that incident. Defendant told Crutchfield that Chico was someone who Defendant had "running the street for me." *Id.*

6. The government presented the testimony of DEA Task Force Agent Jeffery Randall Watson. He testified that investigators had surveillance of Defendant's place of business disclosing that an individual who had left Defendant's place of business was stopped near Bristol, Florida, and was found to have an ounce of cocaine in his vehicle.

On November 28, 2017, Defendant had a conversation with an individual named Edwards in which Defendant told Edwards he wanted Edwards to obtain some "ice cream" for him. Based on their experience, agents interpreted the term "ice cream" to refer to methamphetamine. On November 29, 2017, Edwards vehicle was stopped coming back from Georgia and four ounces of methamphetamine and 38.5 grams of cocaine were seized. In a conversation early on November 30, 2017, King

indicated he was expecting to receive two ounces of methamphetamine from Edwards.[1] Defendant's conversation with his girlfriend later that morning was intercepted in which he complained about the loss of the methamphetamine and the money he spent to purchase it.

Agent Watson testified that Defendant was a "lieutenant" in Crutchfield's drug operation, obtaining drugs to sell with Crutchfield's money, but also purchasing and selling drugs on his own, with drugs obtained from sources other than those used by Crutchfield.

7. Defendant has a criminal history beginning in 2000. Defendant was placed on probation for resisting an officer with violence in 2003. Probation was revoked in 2004 and Defendant was adjudicated guilty. He was placed back on drug offender probation but violation of probation was filed due to new charges. Also in 2004, Defendant was convicted of burglary, petit theft, and fraudulent use of a credit card for which he was sentenced to jail and 3 years' probation. In 2008, probation was revoked and Defendant was sentenced to jail and further probation. Defendant has had several convictions for DUI—in 2004, 2007, and 2013—and for driving while license suspended in 2011, 2013, and 2015. More recently, Defendant was convicted of feeing or eluding law enforcement officers for

---

[1] Two ounces is more than 50 grams.

Case Number 4:18mj17-CAS

which Defendant was placed on 36 months' probation in May 2014. In April 2017, a technical violation of probation was filed and in May, probation was terminated.

8. Defendant's criminal history demonstrates that Defendant has some incidents of violence in his past, and discloses his difficulty in following the law and in completely adhering to the conditions of probation when released. He also has reported use of controlled substances, with the government proffering that investigators learned that Crutchfield told another individual Defendant was using drugs instead of selling them and could not pay Crutchfield for the drugs.

9. Defendant, age 35, has ties to City of Tallahassee and the surrounding area. Defendant reports that he has lived in Tallahassee since 2000. His parents and sister live in Havana, Florida. Defendant has one daughter, age 15, who resides in Tallahassee, but Defendant has not had contact with her for 5 years. Defendant operates, and has been employed by, American Steel Welding Services in Tallahassee.

10. Defendant presented the testimony of his mother, who stated that he could reside with her if released, and she would attempt to ensure he appeared in court when necessary and that he would stay out of trouble.

The Court is not convinced that the family would be able to ensure that Defendant will not present a risk of danger to the community.

11. After weighing and balancing all the criteria at issue, the Court finds that the mitigating evidence and lack of a serious criminal history do not outweigh the evidence of drug sale and use, the connection with firearms, and Defendant's willingness to employ violence. The Court finds based on clear and convincing evidence that Defendant presents a risk danger to other persons and the community by virtue of his criminal history, albeit not extensive, his involvement in sale and use of narcotics, and his expressed willingness to commit acts of violence. The Court does not find that Defendant presents a risk of nonappearance or flight. Based on the evidence and proffer, the Court finds that there is no condition or combination of conditions that would reasonably assure safety of the community and any other person. The motion for detention is therefore **GRANTED**.

Accordingly, it is **ORDERED** that Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for

Case Number 4:18mj17-CAS

private consultation with counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the facility shall deliver the Defendant to the United States Marshal for the purposes of an appearance in connection with a court proceeding.

**SO ORDERED** on January 23, 2018.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**